**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Nos.  99-CR-78-HDC |
| ) | 02-CV-862-HDC |
| LAWRENCE RINGER, ) | |
| ) | |
| Defendant. ) | |

**FINDINGS OF FACT & CONCLUSIONS OF LAW**

This matter came before the Court on remand from the United States Court of Appeals for the Tenth Circuit for an evidentiary hearing on Defendant Lawrence Ringer's Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2255 [Dkt. #72].

**BACKGROUND**

A grand jury indicted Ringer for one count of bank robbery, one count of armed bank robbery, and one count of use of possession of a firearm in furtherance of a crime of violence on June 3, 1999. Count One stemmed from the robbery of a NationsBank branch on March 23, 1999. Counts Two and Three stemmed from the armed robbery of a different NationsBank branch on May 21, 1999. A jury convicted Ringer of all counts on January 20, 2000. The Court of Appeals affirmed Ringer's conviction on direct appeal on May 22, 2001. Ringer filed the instant § 2255 motion on November 14, 2002 arguing that his trial counsel was ineffective for failure to investigate the viability of an insanity defense. The Court denied Ringer's motion on the basis that the evidence admitted against him at trial conclusively established the futility of an insanity defense. The Court of Appeals reversed the Court's judgment and remanded for an evidentiary hearing. The Court appointed counsel for Ringer and heard evidence at a hearing on February 24, 2006.

**FINDINGS OF FACT**

The Court finds the following facts:

1. Stephen Knorr was appointed to represent Ringer.

2. Knorr has extensive criminal defense experience and previously served, on appointment by the United States Court of Appeals for the Tenth Circuit, as the Federal Public Defender for the Northern and Eastern Districts of Oklahoma.

3. In his many years of practice before this Court, Knorr has displayed a level of professional competence rarely exceeded.

4. Ringer has a long history of mental illness.

5. Ringer's consistent mental health diagnosis is that of bi-polar disorder.

6. Ringer received treatment from Parkside Psychiatric Hospital one month before he committed the robbery for which he was charged in Count One of the indictment.

8. Knorr was aware of Ringer's history of mental illness almost immediately upon his appointment to represent him.

9. Knorr was almost immediately suspicious of Ringer's competence to stand trial.

10. On Knorr's motion, the Magistrate Judge ordered that Ringer undergo a competency evaluation.

11. Knorr never sought Ringer's medical records.

12. Knorr did not hire a psychologist to evaluate Ringer.

13. A staff psychologist at the U.S. Medical Center for Federal Prisoners at Springfield, Missouri concluded that Ringer was competent to stand trial.

14. The staff psychologist's forensic report contained synopses of Ringer's prior mental health treatments.

15. The staff psychologist reported that Ringer suffered from bi-polar disorder.

16. The staff psychologist also reported that despite refusing medication, Ringer was able to interact with staff and participate in the competency evaluation.

17. Knorr and Ringer discussed the possibility of an insanity defense.

18. Ringer never asked Knorr to pursue an insanity defense.

19. Knorr's investigation into the facts surrounding the bank robberies revealed that Ringer clearly made preparations for robbing the banks.

20. Knorr's investigation revealed that after the first robbery a dye pack exploded in Ringer's get-away car, that Ringer tried to clean the dye out the car, that Ringer flushed some of the dyed money down the toilet, and that Ringer called a friend for a ride, telling the friend that he had robbed a bank and needed to get away.

21. Knorr's investigation revealed that after the first robbery, Ringer began using a different name.

22. Knorr's investigation into the possibility of an alibi defense to Count One revealed that Ringer had asked one of his family members to testify falsely about his whereabouts.

23. Ringer never denied robbing the banks to Knorr.

24. Based on all of the information he had, Knorr concluded that an insanity defense would not succeed because he thought that while Ringer might have a "mental disease or defect" within the meaning of 18 U.S.C. § 17(a), he did not think he could prove by clear and convincing

evidence that Ringer had a "severe mental disease or defect" that made him unable to appreciate the wrongfulness of his acts as is required by § 17.

25. Knorr's evaluation of the evidence against Ringer was that as to Count One, the Bank's surveillance camera footage was grainy and susceptible to a mis-identification defense.

26. Knorr's evaluation of the evidence against Ringer as to Count Two was that there was not sufficient evidence to prove that Ringer was armed and if the Government could not prove that he was armed, the jury could not convict Ringer of Armed Bank Robbery as charged in Count Two or Possession of a Firearm in Furtherance of a Crime of Violence as charged in Count Three.

27. Knorr believed that it would be extremely difficult to argue insanity to the jury in the alternative.

28. Based on his investigation, Knorr and Ringer decided to purse a defense of mis-identification as to Count One and lack of a possession of a firearm as a required element of Counts Two and Three.

## CONCLUSIONS OF LAW

To establish a claim of ineffective assistance of counsel, a petitioner must show constitutionally deficient performance by his counsel and prejudice resulting from the ineffective performance. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Constitutionally deficient representation is that which "falls below an objective standard of reasonableness." *Id*. at 690. "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." *Id*. at 690. Prejudice is shown when there is "a reasonable probability that, but for

counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694.

In this case, the Court does not reach the issue of prejudice because the Court concludes that Knorr's performance did not fall below an objective standard of reasonableness. As to Ringer's allegation of failure to investigate the viability of an insanity defense, the Court concludes that Knorr's investigation was sufficient to satisfy an objective standard of reasonableness. Knorr had the report of a disinterested staff psychologist whose report to the Court detailed Ringer's mental health history, including the hospitalization that occurred approximately one month prior to the first robbery.

Knorr and Ringer discussed the possibility of an insanity defense, but the evidence of preparations for the robbery clearly influenced Knorr's thinking about the viability of such a defense. Additionally, Ringer never admitted to robbing the banks, something that would have been essential to a successful insanity defense. With respect to Count One, Knorr chose a defense that attacked the Government's evidence (the surveillance camera footage) as unreliable and on the basis of this and the difference in the modus operandi of the two robberies argued misidentification. With respect to Counts Two and Three, Knorr chose a defense that drew on conflicting witness testimony as to whether the robber had a firearm-an essential element of those counts. Knorr thought it would damage his client's credibility with the jury to argue insanity in the alternative, because such an argument would essentially be "I didn't do it. But, if I did, I was insane."

Regardless of whether Knorr's investigation is deemed "thorough" or "less than complete" yet "reasonable" for *Strickland* purposes, the Court concludes that the strategic choices Knorr made were professionally reasonable. As to the issue on which the Court of Appeals remanded this case, the Court concludes that Ringer did not receive ineffective assistance of counsel.

Accordingly, Ringer's Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2255 [Dkt. #72] is **DENIED**.

**IT IS SO ORDERED** this 2d day of March, 2006.

*[signature]*
HONORABLE H. DALE COOK
Senior United States District Judge